IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. CR-07-212-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| JUAN PANTOJA-RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a motion to suppress filed by the defendant.  The

Court heard oral argument on December 13, 2007, and took the motion under

advisement.  For the reasons explained below, the Court will grant the motion.

## FACTUAL BACKGROUND

Pantoja-Ramirez is charged with possession of a sawed-off shotgun.  On

June 26, 2007, he was arrested for driving while suspended.  An inventory search

of his car turned up drug paraphernalia and shotgun shells.

Officer Hemmert then questioned Pantoja-Ramirez in an attempt to procure

his consent to search his apartment:

> Here's what we'll do if you cooperate, you [inaudible] the shotgun
> to me today right now.  We go in and take it out of your pad [inaudible]
> – hear me out before you say no.  You don't want to lie because it just
> makes everything worse.

We'll take the shotgun and the drug paraphernalia and if there is felony narcotics in there, I will talk to [inaudible].  He won't charge you on that.  Is that fair?  I'll take that into [inaudible] property at this time.  We'll send it in for testing and see what it is and then we'll ask for the attorney's review and charging recommendation.

If you obstruct me and don't want to cooperate – it would be the best for you obviously, okay?  I'll go to a judge and get a search warrant.  Okay?  So what I'd like you to do is if you choose to cooperate, we'll seize the shotgun, okay, ammunition and the drug paraphernalia. I'm going to [inaudible] you a ticket for the drug paraphernalia and then I'll talk to the corporal and see what he wants to do about everything else.  Okay?

*See Transcript* at pp. 4-5.

Officer Hemmert read a general consent form to Pantoja-Ramirez, and then gave him time to read it himself.  Pantoja-Rameriz signed that form, and Officer Hemmert searched the apartment, finding the sawed-off shotgun on which the indictment is based.  Pantoja-Ramirez seeks to suppress the weapon on the ground that he only consented to the search after Officer Hemmert had promised not to charge him with any offense based on the shotgun.

The Court heard testimony from Officer Hemmert and admitted exhibits, including a recording of the exchange between him and the defendant.  Officer Hemmert testified that he never offered immunity for the shotgun, but merely intended to convey the fact that he could not charge Pantoja-Ramirez with a federal weapons violation for the shotgun and would have to leave that decision up to others.

## ANALYSIS

The scope of the search must not exceed the scope of the consent.  *See United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006).  The Government bears the burden of showing that the search did not exceed the scope of the consent.  *See generally United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000) (holding that Government bears the burden of showing "the existence of effective consent").

When a defendant's consent is based on an officer's promise, the consent may, depending on all the circumstances, be conditioned on the promise being kept.  *See generally United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990) (holding that a "ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent").  In the *Bosse* case, the defendant gave consent for the agent to enter for one purpose, but the agent exceeded the scope of the consent by entering for an entirely different purpose.  The same problem could arise if a defendant consented to a search based on the officer's promise not to bring any charges based on what he would find, and the officer later brought charges directly based on what he found.  In both cases, the officer's search – depending on all the circumstances – could be found to exceed the scope of the consent, rendering the fruits of the search subject to exclusion.

In *McWeeney*, the Circuit held that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *McWeeney*, 454 F.3d at 1034 (internal quotations omitted).[1]  In this case we know exactly what Officer Hemmert said, because it was taped.  The issue is this: What would the typical reasonable person in Pantoja-Ramirez's position have understood Officer Hammert to mean? Wishful thinking and unilateral misunderstandings are not reasonable.  A reasonable person does not twist an officer's words, or leap to  unjustified inferences.

The Court listened to the tape and read the transcript.  At one point, in the dialogue quoted above, Officer Hemmert discusses the shotgun and drugs and then states that "[h]e won't charge you for that." *See Transcript* at p. 4.  A reasonable person could interpret that statement to apply to the shotgun.  Indeed, that is precisely what Officer Hemmert said in his written report:  "I told Pantoja that I would seize that shotgun and not charge him for the weapon offense." *See Exhibit A* at p. 11.

---

[1] In some cases, the ambiguity lies in the defendant's consent, *see Florida v. Jimeno,* 500 U.S. 248 (1991), while in others it lies in the officer's statements, *see McWeeney*, 454 F.3d at 1034.  The latter situation best describes this case. Accordingly, the Court will examine how a "typical reasonable person" in Pantoja-Ramirez's position would have understood Officer Hemmert.

Officer Hemmert explained in his testimony that he meant that he had no authority to file federal charges on the shotgun, and that the ultimate charging decision would have to be made by a federal prosecutor and grand jury.  Yet that lengthy explanation was never given by Officer Hemmert to Pantoja-Ramirez.

While it is true that later, Officer Hemmert stated that "we'll ask for the attorney's review and charging recommendation," Officer Hemmert testified that he was talking only about the drugs at that point.  Indeed, that is the only reasonable interpretation of that statement when it is reviewed in its full context: "We'll send it in for testing and see what it is and then we'll ask for the attorney's review and charging recommendation."  *See Transcript* at p. 4-5.  The reference to "testing" in order to "see what it is" must refer to drugs, not a shotgun.

Still later, however, Officer Hemmert states that he is going to seize the shotgun, write a ticket for drug paraphrenalia, "and then I'll talk to the corporal and see what he wants to do about everything else."  *See Transcript* at p. 5.  This is as close as Officer Hemmert gets to saying that he is not offering immunity for the shotgun and that the ultimate charging decision will be made elsewhere.

The bottom line is that Officer Hemmert's attempt to procure the consent of Pantoja-Ramirez is confusing.  Listening to the entire exchange, a reasonable person could conclude either that Officer Hemmert (1) offered immunity for the shotgun, or (2) offered only to defer charges now, and let someone else make the

ultimate charging decision.

Such a "contradictory alternative message" has been held by this Circuit in

the *Miranda* context to be "at best misleading and confusing, and, at worst, . . . a

subtle temptation to the unsophisticated" defendant to waive a right.  *See United*

*States v. Connell*, 869 F.2d 1349, 1352 (9th Cir. 1989).  The police cannot "appear

to take away with one hand what they were offering with the other."  *Id*. at 1353

(quoting *Emler v. Duckworth*, 549 F.Supp. 379, 381 (N.D.Ind.1982)).

These principals apply with equal strength here.  Officer Hemmert cannot

appear to offer immunity, and then rely on other statements that contradict that

offer.  A reasonable person in Pantoja-Rameriz's position could have concluded

that Officer Hammert offered immunity for the shotgun.  The Court must assume

that Pantoja-Rameriez's consent was based on that reasonable interpretation.

When that promise was broken, the scope of the search exceeded the scope of the

consent.  Consequently, the Government has not carried its burden of showing that

the search did not exceed the scope of the consent, and the motion to suppress must

be granted.[2]

**ORDER**

---

[2]  The fact that Pantoja-Ramirez signed a general consent form does not alter this result
because "a general consent form does not override a more explicit statement" regarding the
scope of the search.  *See United States v. Breit*, 429 F.3d 725, 729-30 (7th Cir. 2005).  The more
explicit statement here is the offer of immunity in return for consent.

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to

suppress (Docket No. 15) be GRANTED.

DATED:  **December 17, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court